# Law and Equity

IN THE

# SUPREME COURT

OF THE

# STATE OF NEW YORK.

---

### EMERY and others *vs.* ERSKINE and others.

66b 9
164a 323
66b 9
165a 187

While by the code all the forms of pleading are abolished, yet it has prescribed rules which afford to parties the same protection as formerly against uniting either distinct causes of action in favor of several plaintiffs against the same defendant, or uniting several causes of action against defendants having no common interest in such cause of action; and thus the objection against multifariousness, although not permitted *eo nomine*, still exists, in fact.

Owners in severalty of premises occupied by them, upon a mill stream, and of the right of water used by them, may unite in an action against another several owner, to restrain him from using more water than he is entitled to.

In such a case, where the injury consists in diverting the water, and it affects all the several owners in the same way, and at the same time, the interest is a common one, and one which entitles the owners in severalty to unite.

The relief to which the plaintiffs in such an action are entitled is, an injunction restraining the defendants from using more water than they are found to be entitled to.

Where the plaintiffs showed that although they had a right to the use of the quantity of water to which they were entitled, before the defendants were entitled to the use of any water, yet that the defendants persisted in using,

in low water, substantially all the water of the stream ; *Held* that this was a violation of the rights of the plaintiffs as co-owners, and entitled them to maintain the action, so far as to restrain the defendants from using the water when there was not enough for all who were entitled to a fair use of it.

*Held, also,* that by thus limiting the relief granted to the plaintiffs, the question as to the quantity of water to which each owner was entitled, and the quantity each used or wasted, over and above what he was entitled to use, was left unsettled ; and that, the respective rights of the plaintiffs being conflicting, they could not be settled in an action in which all were plaintiffs. That a complaint which should unite such discordant interests would be clearly multifarious, and could not, and ought not, to be sustained.

*Held, further,* that an action or actions at law, were proper and necesssary, to settle the rights of the several parties, to the use of the waters of the stream, and the specific quantity to which each was entitled ; and that such action could only be brought by one of the parties, in order to settle his own rights. Whether he could unite the other owners as defendants, so as to settle their rights, also, in a single action ?    *Quære.*

APPEAL by the defendants from a judgment entered upon the report of a referee.

The facts are fully stated in the opinion of the court.

*S. C. Huntington,* for the appellants.

*R. H. Tyler,* for the respondents.

*By the Court,* MULLIN, J.    This action is brought to settle the right of the several plaintiffs and of the defendants to the use of the water of Grindstone Creek, in the town of Richland, in the county of Oswego, and to restrain the defendants from using more of the said water than they may be found legally entitled to. The plaintiffs, in their complaint, set out their respective rights to the use of the waters of said creek, and allege that they have a right to the use of the quantity of water to which they are respectively entitled, before the defendants are entitled to the use of any water; and that in defiance of their rights, the defendants have used water to which they were not entitled and to which the plaintiffs were entitled.

Emery *v.* Erskine.

The defendants' answers deny the allegations of the complaint, except as to such matters as are admitted, and then allege that their right to the use of the water is prior and superior to that of the plaintiffs, and that the plaintiffs use more water than they are entitled to.

The defendants also insist that the plaintiffs cannot maintain the action, because they have no joint or united interest in the water.

The case was tried before a referee, who finds, in substance, that the plaintiffs are each entitled to the use of certain quantities of the waters of said stream, and that the defendants are also entitled to a certain quantity; that the defendants are entitled to one-half the surplus after the several parties have taken the quantities to which they are entitled ; and that certain of the plaintiffs are entitled to the other half of such surplus. The rights of the several plaintiffs to water are ascertained and determined, as are the rights of the defendants. The referee finds that the defendants used more water than they were entitled to, and that the plaintiffs have used more than they were entitled to. The referee orders judgment that the parties are severally entitled to the use of water as stated by him, and that the defendants be enjoined from using more than they are entitled to.

The objections made in the answer, that the plaintiffs have no joint interest in the water entitling them to unite in an action to restrain the defendants from using more of the said water than they are entitled to, is renewed on the argument, and it presents the principal question of law arising on this appeal.

It is not claimed by the plaintiffs' counsel that the plaintiffs have any joint interest in the water, or the mills propelled by it. The question then is, can the plaintiffs, owners in severalty of the premises occupied by them and of the right of water used by them, unite

in an action against another several owner for using more water than he is entitled to?

Such a union of parties in a bill in equity, before the adoption of the Code, rendered it multifarious, and prevented a decree for the plaintiff; and the defendant might avail himself of the defect by demurrer, or objection at the hearing.

Several and distinct causes of action in favor of several parties plaintiff could not be united in same bill. In *Story's Equity*, § 271, multifariousness is thus defined: "By multifariousness, in a bill, is meant the improperly joining in one bill distinct and independent matters and thereby confounding them; as, for example, the uniting in one bill of several matters perfectly distinct and unconnected, against one defendant, or the demand of several matters of a distinct and independent nature against several defendants, in the same bill. In the latter case the proceeding would be oppressive, because it would tend to load each defendant with an unnecessary burthen of costs by swelling the pleadings with the statement of the several claims of the other defendants, with which he has no connection. In the former case, the defendants would be compellable to unite in his answer and defence different matters wholly unconnected with each other and thus the proofs applicable to each would be apt to be confounded with each other, and great delays would be occasioned by waiting for the proofs respecting one of the matters when the others might be fully ripe for a hearing." (*Murray* v. *Hay*, 1 *Barb. Ch. R.* 59.)

While by the Code all the forms of pleading are abolished, yet it has prescribed rules which afford to parties the same protection against uniting either distinct causes of action in favor of several plaintiffs against the same defendant, or uniting several causes of action against defendants having no common interest in such causes of action; and thus the objection against multifarious-

ness although not permitted *eo nomine*, still exists in fact. Indeed no system of pleading could be tolerated that would permit parties whose interests are entirely distinct, to unite in the same action, or compel defendants having no common interests to contest causes of action against them severally.

Section 167, which prescribes the causes of action which may be united in the same complaint, provides that several causes of action, whether they be such as have been heretofore denominated legal or equitable, or both, when they all arise out of, 1st, the same transaction or transactions; 2d, contract; 3d, injuries to person or property; 4th, injuries to character; 5th, claims to recover real property; 6th, claims to recover personal property; 7th, claims against a trustee. But the causes of action so united must all belong to one of these classes, and must affect all the parties to the action, and not require different places of trial, and must be separately stated.

By § 144, the defendant is permitted to demur when several causes of action have been improperly united. And by § 148, if the objections permitted to be taken by demurrer are not thus taken, or are not taken by the answer, the defendant shall be deemed to have waived them, except the objection to the jurisdiction, and that the complaint does not state a cause of action.

The objection that the plaintiffs have not a joint interest in the subject matter of the action is taken in the answer, and the defendants are therefore entitled to insist upon it on the appeal.

Nothing can be clearer than that these plaintiffs cannot maintain this action, under the general rule as to the joinder of parties and causes of action as above stated.

But this general rule is not without its exceptions. One of these exceptions is that judgment creditors may unite in one bill of discovery and account, the object of

which is to set aside impediments to their remedies at law, created by the fraud of their common debtor, and to have his estate distributed among them according to the priority of their respective liens, or ratably, as the case may be. " This is allowed," says Chancellor Kent, in *Brinkerhoff* v. *Brown*, (6 *John. Ch. R.* 179,) " to prevent multiplicity of suits. * * There is no sound reason for requiring the judgment creditors to separate in their suits when they have one common object in view which in fact governs the whole case. * * Their rights are already established, and the subject in dispute may be said to be joint as between the plaintiffs, on the one hand, and the defendants, on the other, charged with a combination to hinder, delay and defraud their creditors." (*Fellows* v. *Fellows*, 4 *Cowen*, 682.)

Another exception is of several owners of water rights from whose mills the water is wrongfully diverted, or disturbed by wrongful obstructions to the flow of the water. In such case the several owners may unite in a single suit to restrain the unlawful obstruction or diversion. Thus in *Reid* v. *Gifford*, (*Hopkins*, 416,) several owners of mills on the outlet of Leigh's Lake in Washington county were held entitled to unite in a bill to restrain the defendant from diverting the water from such mills by means of a subterranean passage constructed on his own land. The objection was made by the defendant that the defendants had not a joint or common interest; but the chancellor held that though their rights might be distinct, the grievance complained of was a common injury to all the complainants. He also held that it was not necessary to try the right at law in the first instance, because it was clear and certain; and in such case the court could grant relief without requiring the right to be first settled at law. (*Belknap* v. *Trimble*, 3 *Paige*, 577.)

The case of *Murray* v. *Hay* (1 *Barb. Ch. R.* 59) is a

case within the same exception. In that case the bill was filed by several owners of separate and distinct tenements rendered uninhabitable by a common nuisance, and it was held that the action could be maintained.

Other cases, within the principles of either one or other of the exceptions to the general rule, are referred to in the cases cited. And as the case before us is within the second exception above mentioned, if it is within any, it will be unnecessary to refer to any other of the exceptions to the general rule.

It is as much a nuisance for a person entitled to draw a limited quantity of water to draw more than he is entitled to, as it is for a person to use or divert it, who has no color of right to do either. (*Ang. on Watercourses,* § 388.)

In this case, the fact of the use of more than the defendants are entitled to being found, and the plaintiff's right to the water thus unlawfully used being also established, a case is made which entitles the party to relief, unless the finding is unsupported, or the rights of the plaintiff should have been established at law or in some other tribunal, before commencing this action.

The injury consists in diverting the water; it affects all in the same way, and at the same time. In this view of the case, the interest is a common one, and one which, within the cases, entitled the plaintiffs to unite. The extent of the relief to which the plaintiffs were thus entitled was to an injunction restraining the defendants from using more water than they were found to be entitled to.

To enable the referee to grant this relief, it was necessary for the plaintiffs to prove their several rights to draw water, and that the defendants drew more than they were authorized to. This did not necessarily involve an inquiry into the precise amount to which each plaintiff was entitled, but simply the general right to use it. If the defendants were only entitled to draw

after all the plaintiffs were supplied, the extent of the defendants' right would not be material. But if the defendants had a right to use, to a given extent, prior to, or in common with, the plaintiffs or either of them, then an inquiry into the right of each plaintiff, and the extent of such right, became indispensable, as without it it was impossible to determine whether the defendants had used more than they had a right to do.

The facts are not found as fully as they should be, to enable us to say whether the conclusions at which the referee has arrived are supported by the proofs.

As I understand the evidence, in 1830 John and Hartly Holmes owned the land on both sides of the creek, at the dam and for some distance below, with the rights of water belonging thereto. In that year they entered into an agreement, whereby John Holmes became entitled to a prior right to the use of water enough to carry a grist-mill with one run of stones, to be used on the west side of said creek, and Hartly to the use of water sufficient for a saw-mill on the east side, and the surplus, after supplying the saw-mill and one run of stones, was to be equally divided.

In 1834 Hilman Pierce having acquired the rights of Hartly Holmes, to the land and water rights on the east side of the stream, entered into an arrangement with the said John Holmes, whereby John was to have water enough for two run of stones on the west side, to be drawn in a ditch in which the water should be two feet deep when the pond was full. Each was to have half, of the surplus water.

In 1839 John Holmes granted to Jabez Wood water sufficient to full hides in his tannery on the west side of the creek, and the first right to enough of the surplus water to grind bark in his tannery, but the grant of the surplus was subordinate to the prior right of the grist-mill to sufficient water to carry two run of stones.

In 1850 John Holmes conveyed to Peter Sandover the

grist-mill premises, together with the first claim to the water from the dam, sufficient to carry two run of stones, with all their appurtenances, except a share in the privilege granted to the owners of the tannery of water to full hides, and for the ashery.

In 1855 Sandover conveyed to Salmon Erskine, one of the defendants, the land and water rights mentioned in the preceding conveyance to him from John Holmes.

In 1859 Salmon Erskine conveyed to Chauncey H. Partridge the grist-mill lot, with the first right to water sufficient to carry one run of stones, with all the appurtenances.

In 1859 Partridge mortgaged the property and rights last mentioned to Isaiah Holmes. This mortgage was foreclosed, and the premises bid in by Almeron Thomas, who subsequently conveyed them to Avery Griffin, one of the plaintiffs in this suit.

In 1849 John Holmes conveyed to Salmon Erskine a piece of land on the west side of the same creek, together with half the surplus water after supplying grist-mill, saw-mill, and tannery.

The plaintiffs, Emery and Kenyon, own lots with water rights on the east side of the creek, and Griffin and Salisbury, the other plaintiffs, own lots with water rights on the west side of said creek.

From these conveyances and agreements it follows, 1st, that the owners of the grist-mill and tannery lots on the west side of the stream have a right to the use of the water prior to the owners on the east side.

2d. Of the owners on the west side, the tannery has a right to water enough to full hides, as by the arrangement between John and Hartly Holmes, the prior right of the former was limited to water sufficient for two runs of stones, and the grant from John Holmes to Jabez Wood was of water enough to full hides; thus reducing by so much the quantity to which the grist-mill was entitled; and the right of water to grind bark was the first

to the surplus to which John Holmes was entitled after furnishing sufficient to carry the grist-mill. In other words, the water required to full hides was to be taken out of the quantity to which the grist-mill was entitled, and the quantity thus taken was to be the first supplied from the surplus, and whatever additional quantity the mill might require, and then the tannery became entitled to so much of such surplus as was required to carry a bark-mill.

3d. Although by the conveyance given in evidence, it would seem that the defendant Salmon Erskine was entitled to a prior right of water to carry one run of stones, which has never been parted with by him, yet that quantity of water was granted with the grist-mill, and cannot be used by him elsewhere. But the plaintiffs, in ascertaining the quantity of water to which they are entitled, cannot have any benefit of this quantity which they do not own.

4th. By the said conveyances, the defendant is only entitled to one half of the surplus water of said creek after supplying saw-mill, grist-mill, and tannery.

The referee finds, in substance, that there is no surplus in low water, and that the defendants have used water in low water to which the other owners had a prior right.

The rights of all other owners being prior and superior to those of the defendants, it is not material to inquire whether the capacity of their respective wheels was greater or less than they were entitled to use, unless an inquiry as to the number of feet of water which the parties are respectively entitled to use becomes material. And that can be material only when it is made to appear that if they used no more than they are justly entitled to, there would be a surplus which the defendants would be entitled to use. But the proofs make no such case. The plaintiffs show that the defendants persisted in using, in low water, substantially all the water of the

Emery *v.* Erskine.

stream. This was a violation of the rights of all the other owners, and entitles them to maintain this action so far as to restrain the defendants from using the water when there is not enough for all who are entitled to a prior use of it.

By thus limiting the relief granted one important question will be left unsettled, and that is, the quantity of water to which each owner is entitled, and the quantity each uses or wastes, over and above what he is entitled to use. To determine these questions an inquiry into the quantity to which each owner was entitled at the date of his grant, (having regard to the head and fall and the kind of wheels used,) and the effect of improvements and alterations on the head of water and in the wheels and machinery used since such grants, and particularly as they were at the time of bringing this suit, would be necessary.

In settling these questions, it is quite obvious that the rights of the plaintiffs will be conflicting, as each will be interested in reducing the quantity which every other may be entitled to use. These questions cannot be finally settled in an action in which all are plaintiffs. The complaint would be clearly multifarious which should unite such discordant interests, and could not and ought not to be sustained.

Courts of equity have refused, in cases of nuisance, to entertain a bill to restrain them until the rights of the plaintiffs were settled at law. The question of nuisance or no nuisance was peculiarly proper for a jury and the rights of the plaintiff to the property or rights injured by the nuisance, and depended on the application of legal principles rendering an adjudication of a court of law exceedingly proper, if not absolutely necessary, before a court of equity could assume to intervene between the parties.

But it was held by the chancellor, in *Reid* v. *Gifford,*

(*Hopkins*, 416,) that when the right of the plaintiff is clear and undisputed, although it may not have been settled at law, the court would entertain jurisdiction, and grant relief. In this case, not only is the right of the plaintiffs clear and undisputed to a share of the water, but it is expressly admitted in the case. At fol. 3 it is said that the referee, in company with the parties, examined the premises severally occupied by the parties; from which, and the concessions of the parties, it appeared beyond question and dispute that the plaintiffs and the defendant Salmon Erskine were severally possessed of mills, and water privileges on such creek. This concession is so unequivocal that it was unnecessary to proceed at law to settle the rights of the parties, in order to obtain the relief which the court, on the case made by the pleadings and proofs, can grant. Was it competent or proper to entertain the suit in order to settle and adjust the rights of the parties as to the specific quantity of water each is entitled to use? I think an action or actions at law were proper and necessary, and then the action could only be brought by one of the parties, in order to settle his own rights. Whether he could unite the other owners as defendants so as to settle their rights, also, in a single action, it is not now necessary to determine.

I am therefore in favor of affirming this judgment, so far as it grants an injunction to restrain the defendant from using water from the dam on the premises in question when there is not water enough for all the other parties who are entitled to a prior use of the said water; and also of affirming that part of the said judgment in relation to the costs and expenses. And as to the rest and residue of said judgment, I am in favor of reversing it, without prejudice to the right of either or all of the said parties to bring an action or actions to settle the rights of the several parties to this action, to the use of

the waters of said stream, and the specific quantity to which each was entitled. Neither party to have the costs of the appeal, as against the other.

Judgment accordingly.

FOSTER, J., dissented.

[ONONDAGA GENERAL TERM, April 3, 1866. *Bacon, Foster* and *Mullin*, Justices.]